Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Before we hear argument in the first argued case, we want to take a moment to submit the case of Fallon v. O'Malley. That case is hereby submitted. We will now hear argument in the case of Wright v. United States. And I believe Mr. Hartzell, you're up first. Thank you, Your Honor. Tom Hartzell on behalf of Zonia Wright, who is, can you hear okay? Not very well. There's a control on the podium. You can make it a little taller and get the microphone closer to you. There you go. How about now? Much better. Tom Hartzell on behalf of Zonia Wright, the appellant in this case. And I'd like to reserve two minutes for rebuttal if that's necessary. Keep your eye on the clock and we'll try to help you. I will. As an example of what the government is arguing here, yesterday on my way from Tucson to Phoenix, I got a phone call. And I didn't answer and it went to voicemail and my phone automatically transcribed it to a text message. And it was this. Hey, this is Mary from Walmart. A preauthorized purchase of PlayStation 5 with special edition Impulse 3D headset is being ordered from your Walmart account for an amount of $919.45. To cancel your order or to connect with one of our customer support representatives, please press 1. This is a scam. This is a telephone scam. I don't have a Walmart account. If I pressed 1, no doubt they'd be asking for my credit card information and that suddenly I'd find myself notably poorer. But what's amazing about this is now, this phone call came sometime between Tucson and Phoenix and I didn't see it on text message until I arrived in Phoenix. Had I been driving to New Mexico or to see my daughter in San Diego and then, you know, didn't look at it? Well, Mr. Hartzell, with respect, I get your point about the scam attempt that you had. But in this case, the government looked at literally thousands of names across 47 states, 275 of which were Arizona residents. So it's not just in a vacuum. It's within a context. It is true there was no evidence presented by the government of actually connecting with these people, but they were Arizona residents, Arizona phone numbers, and there were lots of them. Doesn't that make a difference for purposes of our analysis? Well, speaking only of venue, the point I was making that wherever I stopped for the night and read my message, according to the government's theory, venue would lie in that district. Isn't venue what you're talking about here? Venue is what I'm talking about, exactly. So when do you think placing a phone call can be an overt act? I gather from the example you've been giving us that you think if you receive a voicemail, that's not sufficient. But do you think there are instances where a co-conspirator makes a phone call to a jurisdiction and that phone call would be sufficient to establish venue? And under what circumstances would that be the case? Absolutely a phone call between districts can be sufficient to establish venue. And the case is cited by the government and that I referred to, too, in the briefs. For example, in Gonzales, there's a confidential informant in one district speaking to what became a... So is your position that somebody has to answer the call on the other end and they have to have a communication? They not only have to answer the phone and have communication, there has to be an act in furtherance of the conspiracy. Answering the phone... Counsel, just as you described your own situation, in the context of a phone scam, why isn't just placing the call the act in furtherance of the conspiracy? Well, it is an act in furtherance of the conspiracy from where the call was made. So then that comes back to Judge Beatty's question of, is your point that the call has to be answered? And you were going to say it's more than answered. And that can't be, right, in a phone scam situation, because there's no other reason for making the phone call other than furtherance of the scam. So it seems to me that the hinge point here is, is it, is the Overt Act placing the call or is the Overt Act that the call connects? The Overt Act is placing the call from the district in which it was dialed. If somebody's calling from the District of Arizona to Northern District of California, the venue is in the District of Arizona from where the call was made. But could it ever be in the district where the call was received? It could be. And under what circumstances? Under the circumstances that somebody answers, that somebody interacts with the caller. So let's back up the hypothetical a little bit. Suppose one of the co-conspirators makes the phone call. They have their script. They're going to try to defraud an elderly person. The person answers. They start their, the caller starts to spiel. And the person receiving the call hangs up. Is that enough? Did they have to talk to them or is it enough that they answered the phone and then hung up? Within the answering, the phone answering district, that's not enough to be an Overt Act in furtherance of the conspiracy. Is there a case to support that? Well, all of the cases that were cited here, all, none, there's not a single case that involves a telephone call or a telephone merely ringing. Every case that the government... We don't, I mean, you are drawing certain inferences from the evidence, but we're reviewing this for sufficiency of the evidence, which means we're viewing it in the light most favorable to the government. We have testimony that there were a few hundred Arizona numbers and testimony that the co-conspirator called every number. That was his practice because they paid for these phone numbers, so they call every number on the list. So you're saying there could, a reasonable juror could not conclude that somebody answered one of those calls? Well, we're disagreeing at a much more basic point, Your Honor. I am not saying it's a sufficiency of the evidence review. This is a de novo review. It's a legal question whether a venue was established in the District of Arizona. I mean, yes, the government... But there's case law that says that when it's a question of fact for the jury, the jury is deciding by a preponderance, and it's a question of fact. So now we have the jury made a factual determination they were properly instructed, and we're reviewing the sufficiency of whether that could support their conclusion that there was venue. Well, Your Honor, I have tried to answer that question last night in case you might have asked it. And in the case that I just mentioned to my opponent this morning, United States of Sullivan, 797F3-623, a Ninth Circuit case, that case held that de novo review applied for the denial of a Rule 29 motion that then went to the jury, but it was still a de novo review. It's not a sufficiency of the evidence case like, did the guy shoot the gun? Now, this is a legal question about whether venue lies in a particular district that is subject to de novo review. Now, I mean, the factual underpinnings of this, of whether even a phone number in Arizona was called, is pretty paper thin. If you recall the factual basis for this whole appeal, we have Danny Malcolm who had the lead list. He said it was his habit to call all the numbers. We had Agent Ibrahim who said that he spot checked the list of people and said some of the people listed as living in Arizona are real people. He couldn't go so far as to say they actually reside in Arizona. He couldn't say that the phone numbers were working phone numbers. He spot checked maybe one, maybe five, maybe ten people, didn't write a report on this, and said these people, some of these people are real people. But he couldn't even say that they were in Arizona. So we have that. And, I mean, as anyone who's lived in Arizona, Judge Boddy, would know that people who have sufficient means don't spend the year in Arizona. These are older people, retired people, snowbirds, who even if they made a 520 phone number ring, even if somebody answered it, there's not one bit of proof that that number was in Arizona. It's simply an Arizona number. The government didn't bother to go out and support this. Now, with the court's permission, unless you have any more immediate questions, I'll reserve my last, you know, minute and 45 seconds for rebuttal. Please do. Please do. Thank you. Very well. Let's hear from the government. Did you say Manti? Is that correct? That's correct, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Cory Manti, and I'm representing the United States from the Tucson U.S. Attorney's Office. This Court should affirm the defendant's jury trial conditions. There's a big courtroom, and it gets lost sometimes.  Thank you, Your Honor. This Court should affirm the jury trial convictions of the defendant for conspiracy to commit money laundering. Under the limited and deferential review of the jury's guilty verdict, there is sufficient evidence for the jury to reasonably find venue by preponderance of the evidence. In this case, the jury was properly instructed on venue, so the verdict is subject only to the standards of Jackson and Neville. It's a deferential. Counsel, before we get to the Jackson standard, which, of course, is a little different than the venue situation, your opposing counsel makes two points that I'd appreciate your response to. Number one, what is the standard of review that we consider here for purposes of whether venue is proper? Is it de novo, or is it something different? The case law indicates that it's de novo. Ran Garcia stands for that point. Oh, it is de novo review, then, right? That's correct, Your Honor. You agree with the opposing counsel? I agree. I agree. Okay. All right. So we've got de novo review. Your opposing counsel says that the government really didn't back up that any of these 275 names were, in fact, Arizona residents, or that there were even Arizona phone numbers, I suppose. What's your response to that? I would disagree with that point. The government submitted the lead list, which contained roughly 275 Arizona phone numbers and residences. The IRS special agent testified that he spot-checked those lead lists, and in the numbers that he checked, those belonged to real people in Arizona. Is there any evidence about those numbers being landlines versus cell numbers? In the record, no, Your Honor. I do not recall any information about whether the numbers were cell phones or lead lines, or landlines, I should say, and I don't believe that the lead lists that the government submitted in its SCR make that point or distinguish between those facts. So, I mean, obviously we're talking about a conspiracy here. Is the government's proof in this case, specifically the IRS agent's spot-checking this list, the fact that it's part of a conspiracy, is that enough for de novo review for us to sustain venue here? Absolutely, Your Honor, especially when it's viewed in the lens of Jackson Nevels, in terms of the limited and deferential review of the jury's verdict. The jury made, assessed the conflicting evidence in this case through reasonable inferences from the record, and ultimately disagreed with the defendant's argument that venue had not been established. And, indeed, the parties argued at length in their closing arguments about the venue issue. The defense suggested that the evidence, the government's evidence, did not sufficiently prove venue. Through its guilty verdict, it implicitly rejected that argument in deliberations that lasted for about three hours. Counsel, something that's sort of stuck out to me about this record is that during the course of the trial, the trial judge mentioned, I don't know that you've satisfied venue, and gave the government an opportunity to address that. And I believe the government's response was, we don't need to do any more. So I guess my question is, why didn't the government do more? When the district court specifically called out, you might have an issue here. I would agree with the court's summary of those sidebars. The government pointed out that the standard was a preponderance standard for establishing venue, and I believe it won those sidebars. The question was, the district court asked the government, the prosecutor, whether the case agent could be asked the question about, did his investigation start with one of the Arizona victims who testified in an unrelated case? But in that earlier sidebar, the government explained that the defendants, it was the government's position that the defendants had withdrawn from the conspiracy before that point. So actually, the factual question that the district court asked wasn't really available. That witness wasn't available to testify in Ms. Wright's prosecution. So in terms of— Presumably you could have presented more detail about these 275 Arizona numbers or something about that. And the government chose not to. Well, in terms of the record, again, Your Honor, the government presented confirmation evidence from the special agent in which he spot-checked that information in the lead list, confirmed that those folks were real people in Arizona. And the evidence that was presented met the preponderance standard, as the jury reasonably concluded in this case. Can I parse that a little bit? Because your friend on the other side says that might have spot-checked it and found out that they were real people, but that that spot-check didn't actually identify their location. Do you disagree with that? I mean, we have an Arizona number, and you have real people. Is there something about what the agent did that established that the real people were in Arizona? At the time of the phone call? At the time of the phone calls? Correct. There's nothing in the record to indicate that. But in terms of what the jury found, it resolved the inferences, any conflicting inferences in the record, and favored the government. It exercised its common sense and determined that at least one of the 275 people listed on those lead lists had been contacted by the conspiracy. Would that matter if that one person was not in Arizona physically? What would the government's position be there? If they were not present in Arizona at the time of the phone call, it would have to – Gonzales, this court's decision in Gonzales speaks to venue regarding phone calls in terms of where the call is made and received. So in terms of Gonzales, if a potential victim was – if there was proof that the potential victim was out of the state, I don't believe that that would meet the standard, at least in terms of the receiving district for Arizona. Then your argument here just has to be based on inference and probabilities. And I'm not saying that in a disparaging way, but I'm just trying to nail down. That is the government's position, that we had enough for a common sense judgment to be that at least somebody was in Arizona because we've got a lot of Arizona numbers. Absolutely, Your Honor. And the jury was instructed and it was legally authorized to consider circumstantial evidence in this case. So the conspirators' practice, routine practice of calling every single number on that lead list was highly probative evidence on the issue of venue. In terms of the jury's deliberations, they found that that met the – in terms of its fact-finding, concluded or found that that was sufficient evidence of venue in the District of Arizona. It was the government's position, I gather then, that because the jury was instructed on this issue and it made a finding that Jackson is the controlling precedent. Absolutely, Your Honor. Jackson, Nevels, Rocha, all those cases. And again, those apply a very – even though a de novo standard applies under the Jackson-Nevels standards, very high deference is given to the jury's verdict, especially in a case like this where they're properly instructed. They made a specific fact-finding in rejecting the defendant's arguments opposing venue and convicted the defendant. Can I follow up on one other point that we were discussing with your opposing counsel? And that is, is the government's position that there just had to be a call placed to a number that's based in Arizona or that the call had to be answered? At trial, the government argued in its closing argument that the answering was the important point. But in terms of – I was the defendant and I couldn't find any case law that would prohibit venue in Arizona or a receiving district just based on that call. But I would say that at trial specifically, the government argued that it was the act of picking up the phone and answering the scripted calls, that that was the important point for the venue analysis. But that's inferred, I gather, in this case, because there was no evidence that somebody actually did pick up the phone. Is that correct? It would be, Your Honor, absolutely. There was no victim testimony that someone in Arizona had picked up the phone. The government's argument is based on, again, circumstantial evidence and appropriate deference to the jury's finding that at least one of the 275 people on those lead lists had been contacted. Does it matter that this was a conspiracy? Absolutely, Your Honor. That's the key for the government, is it not? Yes, and indeed the indictment didn't charge the substantive money laundering counts. I see that I'm running out of time. Does the panel have any further questions? Mr. McAuley? I think not. In summary, I would respectfully request this court to affirm the defendant has failed to meet her high hurdle to overturn the jury's verdict. Thank you. Thank you. All right. Mr. Herschel, Hartsley, you have a little bit of rebuttal time. Thank you, Judge Smith. The agent, IRS agent Ibrahim, never checked a single phone number. In my opening brief and in the excerpts of record, there's his testimony, and I asked. I asked him, I said, and you said you took a look at these numbers. I think you said they were real numbers, right? And he responded, I said they were real people in Arizona. And I asked him about a report, about the extent of his investigation, whether he ever spoke to anybody, and, in fact, all he did was spot check, and we don't even know what a spot check is, that they were real people in Arizona. What I want to emphasize to the court. Counsel, let me ask you this. As you just heard and you know from your exchange of briefs, the government's position is that because this is a conspiracy, and given the Jackson standard, given the fact that the jury was instructed on this, that an inference is enough. What's your response to that? There can be circumstantial evidence to prove venue. I cited one case about driving through the Southern District of California to reach Tijuana. There can be circumstantial evidence, but in this case, the government didn't meet its burden in establishing that. An inference can be drawn that, yes, maybe Malcolm did call numbers in Arizona. But beyond that, I don't believe that just calling the numbers, as the government pointed out in its brief, I mean, that evidence can be shown that one of the co-conspirators called. There's no evidence that anyone answered or furthered. Again, I guess I get your point. But what troubles me is that 275 people, if we talk about 1, 2, 3, 8, but 275 people with Arizona numbers, even if nobody picked it up, why couldn't the jury infer that venue would be met? Well, they did infer that, and I disagree with that. It's illegal. What's the problem with that? It's a legal standard, and when I'm appealing more than the jury verdict as the judge's denial of the Rule 29 motion, that is where it should have been granted, and the case needed to be dismissed for lack of venue. Okay. Unfortunately for you, your time is up. Let me ask my colleagues whether either has additional questions. I think not. Well, thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: SMITH, BADE, FORREST